822 A.2d 656 (2003)
360 N.J. Super. 281
Sydney WEISHAUS, Plaintiff-Appellant,
v.
Marvin WEISHAUS, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 2003.
Decided May 20, 2003.
*658 Stephen H. Roth, Hackensack, argued the cause for appellant (Mr. Roth and Michele M. DeSantis, on the brief).
Lorraine R. Breitman, argued the cause for respondent (Rose & DeFuccio, attorneys, Hackensack; Ms. Breitman, on the brief).
Before Judges WEFING, WECKER and FUENTES.
*657 The opinion of the court was delivered by FUENTES, J.A.D.
Plaintiff Sydney Weishaus (now Silver) appeals from a final judgment of divorce entered by the Family Part setting the amount of alimony to be paid by defendant based on the court's determination of the standard of living enjoyed by the parties during their marriage. Plaintiff argues that the Family Part erred in two respects. First, the court failed to consider the parties' actual lifestyle during the marriage and improperly extrapolated the marital lifestyle based on defendant's current earnings. Second, the court improperly rejected a settlement reached by the parties which vacated the Family Part's determination of the marital lifestyle and deferred a judicial determination on this issue until such time as a motion for modification of alimony is filed by either party. We agree as to the first issue and reject plaintiff's argument as to the second.

I
The parties were married January 13, 1985, and had three children, two girls who are now the ages of 16 and 15 and a boy age 10. The parties separated in March 2000 and filed for divorce in the summer of that same year. The two youngest children remained with plaintiff. The oldest child went to live with her father.
In her Case Information Statement (CIS), plaintiff indicated that the cost to maintain the marital lifestyle amounted to $36,345 per month, or $436,140 per year. This lifestyle was maintained by a combination of four sources: (1) expenses paid by defendant's earnings; (2) expenses paid by defendant's business; (3) expenses paid by defendant's mother; and (4) expenses paid by liquidating marital assets. Defendant did not deny before the Family Part, and does not deny here, that these sources, when considered together, supported the family's lifestyle during the marriage.
On December 4, 2000, the Family Part entered a pendente lite order awarding plaintiff child support for the two children residing with her in the amount of $339 per week, alimony in the amount of $500 per week and directing defendant to pay and "immediately bring current" all household *659 expenses, including credit card balances, utilities and maintenance expenses.
On February 20, 2001, a different Family Part judge heard plaintiff's motion to enforce the pendente lite order. This judge denied plaintiff's motion and reduced defendant's weekly child support obligation to $290 per week, increased the alimony payment to $550 per week and reduced defendant's overall support obligation to exclude payments for the mortgage, home equity loans and taxes, transportation expenses in excess of $100 per month, unreimbursed health care expenses and counseling expenses for the oldest child.
The court made the following statement in support of its decision:
As I see it, his income is a hundred forty-five to a hundred forty-eight thousand dollars a year. After taxes he's down to about $84,000. Now I cannot take $117,000 a year from him. That does not allow him to live. And I know lifestyle is a factor that I have to consider, but I also have to consider expenses of both parties. And in a case like this even with $148,000 there is not enough money to maintain the former lifestyle because number one assets have been depleted. They were living on assets. I can't order the husband's mother to continue to make gifts and support this family. So I'm at that figure.
On June 29, 2001, the parties entered into a Property Settlement Agreement (PSA), which provided, inter alia, for plaintiff to receive term alimony for a period of three years, $28,400 in the first year; $23,400 in the second; and $15,000 in the third. These payments were subject to termination in the event of the death of either party or plaintiff's remarriage or co-habitation. The Agreement further provided as follows:
The Wife acknowledges that the foregoing alimony is term alimony and is for the specific period of time set forth above. The Husband has taken into consideration the equitable distribution and the terms of this Agreement when agreeing to pay the wife the aforesaid amount of alimony for a period of three (3) years and he would not have agreed to the terms of the equitable distribution if alimony extended beyond the three (3) year period. The parties acknowledge however that the case of Lepis v. Lepis [83 N.J. 139, 416 A.2d 45] shall be applicable to the terms of this Agreement.
The Agreement also required the defendant to pay child support for the two younger children on a declining scale, as follows: from July 1, 2001 until June 30, 2002 at the rate of $7,500 per year per child; from July 1, 2002 until June 30, 2003, at the rate of $7,000 per year per child; from July 1, 2003 until June 30, 2004, at the rate of $6,500 per year per child; from July 1, 2004 until the middle child "goes to college", at the rate of $6,000 per child. The Agreement further provided as follows:
The parties waive their right to the cost of living adjustments and the automatic two year review. The parties do not waive any other rights under the law, including any rights either may have as a result of a change in circumstances.
The final hearing on the parties' now uncontested divorce took place on July, 2, 2001. The PSA was the only document admitted into evidence. During the course of the hearing, plaintiff gave the following testimony:
Q. Now under the circumstances and under the financial support that is provided in this agreement, will you be able to resume or live a standard which is consistent or commensurate with the standard enjoyed by both of you during the course of the marriage even though you will be *660 residing in the former marital residence?
A. Not at all.
Q. Okay. Can you tell the Court and counsel why that is the case?
A. During our marriage we were supported by Marvin's mother who is very wealthy in large part. And I am no longer sharing in that subsidythat additional income that my husband gets. So thatthat's partially why. And the other piece is that we did have joint assets which I needed to use in order to maintainto live during this two year period of time. And also the substantial drop in the stock market made us lose some of that money as well. So for those two reasons I will not be able to live as I lived before and during my marriage.
Q. And the standard of living that you did enjoy in the marriage was accurately represented in the case information statement that you filed with the Court during the pendency of this action. Is that correct?
a. Yes, correct.
In response to the court's questions, defendant testified that his annual income averaged around $125,000 over the past three years. Defense counsel indicated to the court that the marital lifestyle had been maintained, in large part, by contributions or gifts from defendant's mother and liquidation of and borrowing against marital assets. The judge then made the following finding:
So I don't see any reduction in lifestyle when I exclude the money that came into the household from his [defendant's] mother which I cannot charge him with having a responsibility to continue so that if she [plaintiff] ever comes back and tries to claim that she can't maintain her lifestyle, she cannot utilize the money that came into the household from his mother as a basis for seeking modification. And with respect to the other items, it seems that they lived on assets. Again, that's another item that I cannot require him or I cannot charge him for which I can charge him a responsibility. He certainly cannot continue to support his former wife out of assets. So I find there is no actual shortfall in lifestyle and that finding should be included in the Judgment of Divorce.
The trial court expanded on these findings in a letter opinion filed with the Clerk of the Appellate Division pursuant to R. 2:5-1(b):
Marital Lifestyle:
Husband's annual income from all sources the last three preceding years was $99,000 in 1998, $121,689 in 1999, and $114,502 in 2000. Husband's average income over this three year period is $108,300. Wife did not work during the marriage and received pendente lite alimony in the amount of $22,828 annually for the year 2000.

 $108,300 Gross average income
 - $ 25,000 Taxes (23%)
 ______
 $ 83,300 Net income
 - $ 25,000 Child care costs for 3 children (30%)
 ______
 $ 58,300 Net to the parties
 OR
 $ 29,150 to each party for their use.

Therefore, I found the marital lifestyle to be $29,150 for each party.

II
Plaintiff appealed and the case was scheduled for a pre-argument conference through the Civil Appeals Settlement Program (CASP). At this conference, the parties agreed to settle the case. With respect to the question of the marital lifestyle, the parties agreed to vacate the Family Part's findings and further agreed as follows:

*661 Both parties acknowledge that they have not agreed upon what was the parties' standard of living during their marriage, but they have agreed not to litigate that issue at this time.
The parties also acknowledge and agree that should either party hereafter make an application that requires the Court to ascertain the accustomed standard of living during their marriage, the Court will then be required to determine that issue. The parties further acknowledge that if the plaintiff or the defendant hereafter seeks to modify the alimony provisions of the parties' Property Settlement Agreement [dated June 29, 2001], which agreement is incorporated in the Judgment, the Court may then be required to determine, inter alia, if either party is entitled to relief pursuant to Crews v. Crews, 164 N.J. 11, 751 A.2d 524 (2000).
The case was thus remanded to the Family Part where the trial court refused to approve the settlement. The judge specifically objected to that part of the settlement which deferred determining the marital lifestyle until either party makes an application for a modification of support.

III
Our analysis will be guided by our Supreme Court's clear direction in Crews v. Crews, 164 N.J. 11, 26-27, 751 A.2d 524 (2000):
The setting of the marital standard of living is equally important in an uncontested divorce. Accordingly, lest there be an insufficient record for the settlement, the court should require the parties to place on the record the basis for the alimony award including, in pertinent part, establishment of the marital standard of living, before the court accepts the divorce agreement.
....

Finally, we note that in either a contested or uncontested divorce setting, the earnings of the supporting spouse at the time of entry of the divorce do not limit the standard of living enjoyed by the parties during the marriage. Indeed, in establishing the marital standard of living, a supporting spouse's current earnings are not determinative. (Emphasis added. Citations omitted.)
Here, in determining the marital lifestyle, the trial court improperly excluded the contributions made by defendant's mother as well as the funds generated by the liquidation and leveraging of marital assets. A judicial determination of marital lifestyle must be based on evidence detailing the parties' actual standard of living, whether supported exclusively by the parties' earnings or supplemented by the liquidation of family assets, borrowing or even gifts. It is not for the court to extrapolate a sensible lifestyle based only on actual earnings. People are free to live above their means. As noted by Judge Dreier in Hughes v. Hughes, 311 N.J.Super. 15, 34, 709 A.2d 261 (App.Div.1998), "[t]he standard of living during the marriage is the way the couple actually lived, whether they resorted to borrowing and parental support, or if they limited themselves to their earned income."
Furthermore, even in uncontested cases, "the court should require the parties to place on the record the basis for the alimony award including, in pertinent part, establishment of the marital standard of living, before the court accepts the divorce agreement." Crews, supra, 164 N.J. at 26, 751 A.2d 524. Thus, in determining the "marital standard of living," the trial court must rely on specific evidence detailing the parties' manner of living during the marriage as well as the *662 financial sources underwriting it.[1] This record will form the baseline from which to determine any future application for modification of support. Id. at 16, 751 A.2d 524. Even when the parties stipulate as to the marital lifestyle, the stipulation must be definite and certain in its terms and the consent of the parties to be bound by it must be clearly established. Kurak v. A.P. Green Refractories Co., 298 N.J.Super. 304, 325, 689 A.2d 757 (App.Div.), certif. denied, 152 N.J. 10, 702 A.2d 349 (1997).
Finally, under Crews, if the parties have been unable to stipulate to the marital lifestyle, despite their agreement as to the amount of support, the trial court is required to determine the parties' marital lifestyle. This determination must be made at the time the final judgment of divorce is issued and cannot be deferred to any future modification hearing. Id. at 26, 751 A.2d 524. Indeed, it was precisely the trial court's failure to determine the marital lifestyle at the time the divorce decree was issued in Crews that our Supreme Court found objectionable. Id. at 16, 751 A.2d 524. Thus, the trial court here was correct in rejecting a settlement which sought to frustrate this non-deferrable judicial responsibility.
In making this determination, the trial court must see that the record reflects each party's description of their historical lifestyle, including such elements as the marital residence, vacation home, cars owned or leased, typical travel and vacations each year, schools, special lessons, and camps for their children, entertainment (such as theater, concerts, dining out), household help, and other personal services. One method for placing the parties' descriptions in the record would be by means of detailed certifications from each party, with an opportunity for cross-examination on the certifications. Alternatively, the judge may allow the parties' positions to be entered entirely through live testimony.[2] In either case, the judge must make detailed findings of fact as to the essential elements of the parties' actual lifestyle, without reliance upon such vague and subjective terms as "middle-class," "working-class," or "upper-class."
Once the court has determined the marital lifestyle, it can then focus on establishing the amount of support required by the dependent spouse to maintain it. It is at this point in the analysis that the supporting spouse's current earnings become relevant, but not alone determinative in arriving at an appropriate support figure.
The supporting spouse's current earnings become relevant when determining whether, and the degree to which, the supporting spouse can support the dependent spouse in maintaining a lifestyle reasonably comparable to the standard of living enjoyed by the parties during the marriage. And although the supporting spouse's current income is the primary source considered in setting the amount of the support award, his or *663 her property, capital assets, and "capacity to earn the support awarded by diligent attention to his [or her] business" are all proper elements for consideration. Similarly, the supported spouse's ability to contribute to his or her own support must be made express in the record when the court enters or approves a support award.

[Crews, supra, at 27, 751 A.2d 524. (Emphasis added.) (Citations omitted.)]
Thus, the trial court must expressly consider on the record (1) the supporting spouse's current income; (2) capital assets available to the supporting spouse for leveraging and/or liquidation; (3) the supporting spouse's capacity to earn the amount of support awarded by diligent attention to his or her business; (4) the ability of the supported spouse to contribute to his or her own support. This process must be followed in contested cases, where the trial court sets the amount of support.
In uncontested cases, where the parties have agreed upon the amount of support, the record must reflect both the parties' agreement as to the amount of support and whether or not the support is sufficient to maintain the marital lifestyle. This record will form the baseline from which the court will determine any future motion for modification of support.

IV
The Family Part's findings as to the parties' marital lifestyle are reversed. The matter is remanded to the trial court for it to determine the marital lifestyle consistent with the principles articulated here.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] Although the parties' CIS may contain the bulk of the information needed to make this assessment, the court should not rely exclusively on these documents. As noted by Justice LaVecchia in Crews, "the CIS information generally reflects a more current financial picture of the parties. It does not necessarily provide information reflective of the standard of living enjoyed during the marriage." Id. at 27, 751 A.2d 524.
[2] The appropriate period to be covered by the certifications or the testimony will be determined by the judge, and will depend upon the circumstances of the marriage. For example, in a long term marriage with a consistent lifestyle, the last three years of cohabitation may be an appropriate period to consider. Where the parties' financial circumstances were inconsistent from year to year, a different period may be appropriate, all in the judge's discretion.