NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3624-13T1

LISA LOMBARDI,

     Plaintiff-Appellant/
Cross-Respondent,

v.

ANTHONY A. LOMBARDI,

     Defendant-Respondent/
Cross-Appellant.

_____

> APPROVED FOR PUBLICATION
> AS REDACTED
> September 12, 2016
>
> APPELLATE DIVISION

Argued March 1, 2016 — Decided  September 12, 2016

Before  Judges  Espinosa,  Rothstadt,  and
Currier.

On appeal from Superior Court of New Jersey,
Chancery  Division,  Family  Part,  Mercer
County, Docket No. FM-11-113-11.

Mark  H.  Sobel  argued  the  cause  for
appellant/cross-respondent  (Greenbaum,  Rowe,
Smith, & Davis LLP, attorneys; Mr. Sobel, of
counsel and on the brief; Lisa B. DiPasqua,
on the briefs).

Brian  G.  Paul  argued  the  cause  for
respondent/cross-appellant     (Szaferman,
Lakind, Blumstein & Blader, P.C., and Stark
& Stark, attorneys; Mr. Paul, of counsel and
on the briefs).

The opinion of the court was delivered by

ROTHSTADT, J.A.D.

This appeal requires us to address the calculation of alimony where the parties relied on only a fraction of their household income to pay their monthly expenses and regularly saved the balance during the course of their marriage. It is well-established that the accumulation of reasonable savings should be included in alimony to protect the supported spouse against the loss of alimony. See Jacobitti v. Jacobitti, 135 N.J. 571, 582 (1994); Martindell v. Martindell, 21 N.J. 341, 354 (1956); Davis v. Davis, 184 N.J. Super. 430, 437 (App. Div. 1982). In this case, we consider whether the parties' history of regular savings as part of their marital lifestyle requires the inclusion of savings as a component of alimony even when the need to protect the supported spouse does not exist.

The Family Part found that the monthly savings were part of the marital lifestyle, but excluded the amount from its calculation of alimony because savings were not necessary to ensure future payment of alimony. We disagree with the court's decision and hold that regular savings must be considered in a determination of alimony, even when there is no need to create savings to protect the future payment of alimony.

Both plaintiff Lisa Lombardi and defendant Anthony A. Lombardi appeal from portions of their final judgment of divorce (FJOD), entered after a twenty-eight day trial. Plaintiff

challenges the court's alimony award based upon its rejection of the savings element despite it being undisputed that during the course of the marriage the parties "established [a] practice of savings" that was "the largest component of [their] marital lifestyle." As to child support, she claims the court's "allocation . . . of the children's expenses [does] not allow [them] to share in their father's economic good fortune." Plaintiff also challenges the court's equitable distribution of two accounts, and its denial of her request for counsel fees and costs. Defendant avers that the FJOD should be affirmed in all respects, but argues that, "in the event any portion of [it] is reversed and remanded," the court's failure to provide him with a credit for "the active appreciation" of the funds in one of the two accounts disputed by plaintiff warrants reversal.

We have considered the parties' arguments in light of the record and our review of the applicable legal principles. We vacate and remand for reconsideration of the determinations as to alimony, child support, the equitable distribution of the two subject accounts, and counsel fees and costs.

## I.

The parties began dating in college, and married in May 1990, three years after their graduation. Three children were born of the marriage, now ages twenty, eighteen, and fifteen.

A-3624-13T1

Plaintiff filed a complaint for divorce on August 2, 2010, and the court entered the FJOD on March 7, 2014.

At the time of the FJOD's entry, the parties were forty-eight-years-old and healthy, and defendant was employed full-time. Plaintiff, who holds a bachelor's degree in marketing, previously worked as the vice president of desktop publishing at Bear Stearns, reaching a salary of $80,000 per year, when the parties agreed that she would leave the workforce to become a full-time homemaker after the birth of their first child. As the children grew older, plaintiff obtained a certification as a fitness instructor and now teaches classes part-time at local fitness clubs for a gross income of approximately $10,000 per year. She is the children's parent of primary residence and continues to reside in the marital home.

Defendant has a bachelor's degree in finance, a master's degree in business administration, and is a chartered financial analyst. During the course of the marriage, he worked for a number of investment firms as an analyst or portfolio manager. He accepted a position with his current employer in 2004, at a base salary of $250,000 with a $1,125,000 guaranteed bonus for two years, and is now a vice president, senior portfolio manager. He was paid total compensation ranging from $1,087,000 to $2,275,000 during the five years immediately preceding the

filing of the divorce complaint.

Despite defendant's substantial earnings, the parties routinely saved the better part of his salary. The portion of his earnings used for the family's expenses allowed them to enjoy a comfortable, but not extravagant, standard of living. The decision to not "live a very lavish lifestyle" was the result of the parties' shared desire to budget most of their income during the marriage. According to plaintiff, after watching her parents struggle financially as a result of unreimbursed health care expenses, she wanted to ensure that she had enough saved for her and defendant's care as they grew older so that they could still pay for their children's college education and "live comfortably" after retirement without the need to "worry" about finances or "change [the family's] lifestyle." According to defendant, although he was still working, they saved so that he could retire at forty-five, when the family would have accumulated $5 million in assets, a sum sufficient to generate enough annual income to meet the family's needs at their current lifestyle.

The parties spent $22,900 per month in order to maintain their lifestyle, exclusive of savings and gifts to the children. Plaintiff estimated that the parties saved approximately $67,000 per month. Consistent with their lifestyle choice, they did not

often buy extravagant clothing or dine at expensive restaurants. Defendant drove a BMW and then a Camaro, while plaintiff drove a Buick Enclave. The family usually spent vacations locally, in New York's Catskill Mountains or in Cape May, and sometimes took ski vacations during the children's winter break. They never hired domestic help or sent the children to daycare.

In addition to their savings, which totaled approximately $4.18 million at the time of the FJOD,[1] the parties owned the marital home. They established and funded college savings accounts for all three children, and avoided debt for the most part — at the time of the divorce complaint, they had a mortgage on the marital home, a lease on one car, and a loan on another.

The parties eventually settled issues of custody and parenting time, agreed that plaintiff would be entitled to an award of permanent alimony, although they disputed the amount, and to an equal division of the marital estate by equitable distribution, except as to one joint account and another account opened by defendant in his own name. They also did not resolve their claims for counsel fees and costs. These remaining issues were addressed during the parties' twenty-eight day trial that began in December 2011 and concluded in 2014 when the court

---

[1]   The parties also held another joint account and retirement accounts that they agreed should be divided equally.

placed its oral decision on the record over the course of four days.

The court entered the FJOD and the parties filed their respective appeals from certain provisions thereof.

II.

Our review of the Family Part's determination in dissolution matters is limited. We accord deference to decisions of the Family Part based on its expertise in matrimonial matters. See Cesare v. Cesare, 154 N.J. 394, 412 (1998). We will not disturb its decisions if they are supported by substantial credible evidence and are consistent with applicable law. Ibid.; see also Gnall v. Gnall, 222 N.J. 414, 428 (2015). This standard applies equally to its decisions regarding alimony, see J.E.V. v. K.V., 426 N.J. Super. 475, 485 (App. Div. 2012), child support, see J.B. v. W.B., 215 N.J. 305, 325-26 (2013), equitable distribution, see La Sala v. La Sala, 335 N.J. Super. 1, 6 (App. Div. 2000), certif. denied, 167 N.J. 630 (2001), and counsel fees. See Williams v. Williams, 59 N.J. 229, 233 (1971); Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011). However, we owe no special deference to the court's legal conclusions. See D.W. v. R.W., 212 N.J. 232, 245-46 (2012).

III.

A.

We begin our review by addressing the trial court's alimony award. According to plaintiff, she required $16,291 per month to support herself and the three children at a standard of living comparable to that enjoyed during the marriage, exclusive of savings. She sought an additional $30,000 per month for savings.[2] Plaintiff requested an award of child support in the amount of $5000 per month and a requirement that defendant be solely responsible for paying certain expenses for the children, such as extracurricular activities, tutoring, summer camps, cars, and auto insurance.

After considering the evidence, the court established a permanent award of monthly alimony in the amount of $7600, without including an amount for savings, even though it found it was a component of the marital lifestyle. It determined that plaintiff required alimony to meet her needs at the marital

---

[2] Plaintiff's forensic accounting expert testified that the parties had habitually saved an average of $67,000 per month during the final years of the marriage. He estimated that, even at the $30,000 per month plaintiff was requesting as a savings component of alimony, she would be able to save $228,000 per year after taxes, while defendant would be able to save $705,000. At that rate, in fifteen years, when the parties would both be sixty-one-years-old, plaintiff and defendant would have accumulated approximately $3,960,000 and $12,043,000, respectively, assuming a three percent rate of return on investment compounded monthly.

A-3624-13T1

standard of living, which the court characterized as a "modest middle-class lifestyle," and found that the parties did not dispute the monthly amount needed to meet plaintiff and the children's expenses. The court concluded that plaintiff's proposed budget, without savings, for herself and the children was largely reasonable and consistent with the evidence, and approved a monthly budget of $14,516, excluding savings. After deducting the $5000 it was awarding in child support, the $3610 monthly after-tax income it estimated could be generated by investment of plaintiff's equitable distribution share, and the $583 after-tax monthly earnings from her part-time work, the court found plaintiff would require another $5323 to meet her budget. Accounting for taxes, the court concluded that the gross award of $7600 per month would cover the shortfall. The court then determined that defendant earned a sufficient amount to cover plaintiff's budget, including the requested savings component, and his own expenses.

In reaching its decision, the court observed that each party would have the benefit of half of the roughly $5.5 million marital estate after equitable distribution, providing a significant opportunity for investment and saving for unanticipated expenses, although defendant's considerable income and earning potential conferred on him a greater opportunity

than plaintiff. Moreover, the children's college expenses were already provided for in amply-funded custodial accounts, and defendant was responsible for maintaining the children's medical, dental, and vision coverage and paying all uncovered costs over $250 per child per year. Finally, the parties had no debt, and plaintiff, the parent of primary residence, would retain the marital residence unencumbered by a mortgage.[3]

As for the savings issue, the court observed that the parties' "earning[s] exceeded consumption by approximately $87,000 per month on average." It noted that those savings could be understood as a "component of lifestyle" in the sense that the parties had habitually saved the better part of their income during the marriage, whether, as defendant claimed, to provide for an early retirement or, as plaintiff testified, to enhance the couple's economic security more broadly, and lived a generally frugal lifestyle as a result. Nonetheless, the court concluded that including savings as a component of an alimony award was only warranted to the extent it was necessary to ensure a dependent spouse's economic security in the face of a later modification or cessation of support, which were not issues here. However, it identified factors it found allowed

---

[3] Defendant paid off the mortgage in full from a joint account during the litigation. According to plaintiff, he did so without her knowledge or consent.

plaintiff to accumulate savings through means other than increased alimony, though not to the extent the parties saved during the marriage. It cited to, among other factors, some "overlap" in the alimony and child support budgets, plaintiff's right to claim the children as exemptions for tax purposes, and "her ability to work and retain earnings to use for savings . . . because of the maturation of the children . . . such that she would have more time to spend working if she chose to do so." The court stated:

> Furthermore, from a budget standpoint the plaintiff will have no obligation for any college expense, no obligation for any unreimbursed medical or health expense, all extracurricular activities are covered by the above-guideline . . . award, and if she chose to work more that she would be protected against any claim that her alimony should be reduced or that she has lesser need.
>
> [(Emphasis added).]

Also, the court noted that defendant had been ordered to maintain a life insurance policy to secure his obligation to plaintiff and the children in case of his death, and determined defendant's substantial assets and income therefrom made it unlikely he would obtain a modification of his support obligation in the future.

The court concluded by summarizing its reasons for not including a savings component in its alimony calculation:

A-3624-13T1

The [c]ourt finds that a permissible savings component which it elected not to do or not to include was because there are potentials for [plaintiff] to accumulate, earn, and otherwise be protected from a reduction by virtue of, one, reasons having to do with the current budget and the room in the budget to still save, the ability to work more without worry about a reduction in alimony, the investment opportunity that might enhance the return on the over $2 million that she will receive, the life insurance to protect against the death of the defendant, and the likelihood of a continued appreciation and increase in assets and earnings that . . . would protect her against any arbitrary . . . reduction in alimony based upon early retirement or otherwise.

### B.

Plaintiff argues the court erred in excluding a savings component from the alimony award because, among other reasons, the award permitted defendant to continue to enjoy the marital standard of living but deprived plaintiff of the same opportunity. She argues her position is supported by the fact that, although the case information statement form required by our courts did not initially include savings as a budget category, that category has since been added, reflecting the courts' view that savings is a fundamental element of the family lifestyle that must be accounted for in a support award. We agree.

Alimony is authorized by N.J.S.A. 2A:34-23 and is governed by the factors enumerated in N.J.S.A. 2A:34-23(b).[4]  It exists to "permit [one spouse] to share in the economic rewards occasioned by [the other's] income level (as opposed merely to the assets accumulated), reached as a result of their combined labors, inside and outside the home."  Gugliotta v. Gugliotta, 160 N.J. Super. 160, 164 (Ch. Div.), aff'd, 164 N.J. Super. 139 (App. Div. 1978); see also Konzelman v. Konzelman, 158 N.J. 185, 195 (1999).  "[A]limony is neither a punishment for the payor nor a reward for the payee. . . .  It is a right arising out of the marriage relationship to continue to live according to the economic standard established during the marriage . . . ."  Aronson v. Aronson, 245 N.J. Super. 354, 364 (App. Div. 1991).  "Alimony relates to support and standard of living; it involves the quality of economic life to which one spouse is entitled, which then becomes the obligation of the other."  Gnall, supra, 222 N.J. at 429.

A proper alimony award "assist[s] the supported spouse in achieving a lifestyle that is reasonably comparable to the one enjoyed while living with the supporting spouse during the

---

[4]   Several significant aspects of the statute were amended effective after the entry of the FJOD.  L. 2014, c. 42, § 1 (effective Sept. 10, 2014).  None of the amendments, however, impacts the trial court's decision or ours in this case.

marriage." Tannen v. Tannen, 416 N.J. Super. 248, 260 (App. Div. 2010) (quoting Steneken v. Steneken, 183 N.J. 290, 299 (2005)), aff'd o.b., 208 N.J. 409 (2011). "[A] judge awarding alimony must methodically consider all evidence to assure the award is 'fit, reasonable and just' to both parties, N.J.S.A. 2A:34-23, and properly balances each party's needs, the finite marital resources, and the parties' desires to commence their separate futures, N.J.S.A. 2A:34-23(c)." Gnall v. Gnall, 432 N.J. Super. 129, 149 (App. Div. 2013), rev'd on other grounds, 222 N.J. 414 (2015).

The goal of alimony is to assist the supported spouse in achieving a lifestyle "reasonably comparable" to the one enjoyed during the marriage. Steneken, supra, 183 N.J. at 299; see also Crews v. Crews, 164 N.J. 11, 17 (2000); Cox v. Cox, 335 N.J. Super. 465, 473 (App. Div. 2000). "The importance of establishing the standard of living experienced during the marriage cannot be overstated." Crews, supra, 164 N.J. at 16. It is the "touchstone for the initial alimony award." Ibid.

In determining the marital lifestyle, the trial court looks at various elements including "the marital residence, vacation home, cars owned or leased, typical travel and vacations each year, schools, special lessons, and camps for [the] children, entertainment (such as theater, concerts, dining out), household

14

help, and other personal services." Weishaus v. Weishaus, 360 N.J. Super. 281, 290-91 (App. Div. 2003), rev'd in part on other grounds, 180 N.J. 131 (2004). The ultimate determination must be based not only on the amounts expended, but also what is equitable. Glass v. Glass, 366 N.J. Super. 357, 372 (App. Div.), certif. denied, 180 N.J. 354 (2004).

"[A]n appropriate rate of savings . . . can, and in the appropriate case should, be considered as a living expense when considering an award of . . . maintenance." Id. at 378 (second alteration in original) (quoting In re Marriage of Weibel, 965 P.2d 126, 129-30 (Colo. App. 1998)). Thus, the court can take into account the marital standard of living and allow the supported spouse to save for the future. See id. at 379; see also Capodanno v. Capodanno, 58 N.J. 113, 120 (1971). This is particularly true when the supporting spouse can afford any amount paid to the supported spouse. Glass, supra, 366 N.J. Super. at 379.

A spouse's need for savings has long been recognized as a component of alimony, see Martindell, supra, 21 N.J. at 354, that allows for the accumulation of "reasonable savings to protect [the supported spouse] against the day when alimony payments may cease because of [the death of the supporting spouse] or change in circumstances." Davis, supra, 184 N.J.

Super. at 437 (quoting Khalaf v. Khalaf, 58 N.J. 63, 70 (1971)). Savings have been used for such security in lieu of directing the supporting spouse to keep a life insurance policy or establish a trust. See Jacobitti, supra, 135 N.J. at 582 (upholding an order to create a trust in lieu of life insurance to ensure "continuing alimony payments for the life of the dependent spouse"); Davis, supra, 184 N.J. Super. at 436-40 (upholding an order directing the supporting spouse to obtain and designate the dependent spouse as the beneficiary of a life insurance policy). In short, savings has been a relevant and appropriate factor to be considered in the establishment of a reasonable and equitable alimony award because the amount of support awarded is subject to review and modification upon a showing of a change of circumstances, which could result in the supported spouse being incapable of supporting himself or herself. See Davis, supra, 184 N.J. Super. at 437.

However, the protection of income being derived through alimony is not the only reason why a supported spouse requires savings, especially where regular savings have been part of the established marital lifestyle. "[A]n appropriate rate of savings to meet needs in the event of a disaster, to make future major acquisitions such as automobiles and appliances, and for retirement can, and in the appropriate case should, be

considered as a living expense when considering an award of . . . [alimony]." Weibel, supra, 965 P.2d at 129-30; see also Glass, supra, 366 N.J. Super. at 378.

The most "appropriate case" in which to include a savings component is where the parties' lifestyle included regular savings. Because it is the manner in which the parties use their income that is determinative when establishing a marital lifestyle, see Weishaus, supra, 180 N.J. at 145, there is no demonstrable difference between one family's habitual use of its income to fund savings and another family's use of its income to regularly purchase luxury cars or enjoy extravagant vacations. The use of family income for either purpose over the course of a long-term marriage requires the court to consider how the money is spent in determining the parties' lifestyle, regardless of whether it was saved or spent on expensive purchases. The fact that the payment of the support ultimately is protected by life insurance or other financial tools, does not make the consideration of the savings component any less appropriate.

The Supreme Court has recognized the need to consider regular savings in determining a marital lifestyle by including a line item for monthly savings in Schedule C of the case

information statement parties must file in family matters.[5]  See R. 5:5-2; see also Family Part Case Information Statement, Pressler & Verniero, Current N.J. Court Rules, Appendix V(D) to R. 5:5-2 (2016).  While the original case information statement form did not include a line item for savings, it was changed two years after implementation to add or subtract certain budget items so that the form would "more closely track [a family's] actual expenses."  Report of the Supreme Court Committee on Family Division Practice, 118 N.J.L.J. 117, 130-31 (July 24, 1986).  The Supreme Court's Committee on Family Division Practice recommended a "savings and investments" item, reasoning that "[a]lthough such a line might be viewed as subject to abuse, [it] would still appear appropriate because in many households savings and investments represent a fundamental portion of an ongoing budget."  Id. at 131.  The Court adopted that recommendation and, as stated in Rule 5:5-2(e), the revised form is required in all actions involving alimony, and copies must be preserved by the parties as evidence of the marital

---

[5]   While deciding an unrelated issue in an earlier case, we also signaled our recognition of a trial court's need to properly consider the savings component.  See Tannen, supra, 416 N.J. Super. at 277 (finding judge's consideration of lifestyle inadequate because he did not consider savings component, among other factors, as part of parties' lifestyle).

standard of living at the time the award was made. R. 5:5-2(e)(3).

We reject defendant's assertion that the court correctly addressed the savings component through equitable distribution of the parties' accounts. The argument runs afoul of the rule that "equitable distribution determinations are intended to be in addition to, and not as substitutes for, alimony awards," which are awarded to provide for the maintenance of the marital lifestyle post-dissolution. Steneken, supra, 183 N.J. at 299. Moreover, it is not equitable to require plaintiff to rely solely on the assets she received through equitable distribution to support the standard of living while defendant is not confronted with the same burden. As expressed under the alimony statute's current version, the court must recognize that "neither party ha[s] a greater entitlement to that standard of living than the other." N.J.S.A. 2A:34-23(b)(4).

We therefore hold that the Family Part must in its assessment of a marital lifestyle give due consideration to evidence of regular savings adhered to by the parties during the marriage, even if there is no concern about protecting an alimony award from future modification or cessation upon the

death of the supporting spouse.[6] We recognize that the majority of other jurisdictions have not extended their courts' consideration of the savings component of an alimony award to the extent we do today, see Glass, supra, 366 N.J. Super. at 377-78 (surveying cases awarding retirement savings as part of alimony award), but we believe the result is equitable, see id. at 372, and consistent with our statute.

Having said that, we caution that a court is equally obligated to consider the marital lifestyle and the financial situation of the parties post-divorce as set forth in the statute, and "[n]o factor sh[ould] be elevated in importance over any other factor unless the court finds otherwise, in which case the court sh[ould] make specific written findings of fact and conclusions of law in that regard." N.J.S.A. 2A:34-23(b).

We recognize that the court attempted to identify areas through which plaintiff might be able to save money at some level, but the court's suggestions did not amount to a consideration of savings as part of the parties' standard of living, especially where there was no dispute that the parties saved the lion's share of the family's income or that defendant

---

[6] Our holding is limited to the establishment of alimony. We do not decide in this opinion the extent to which the savings component should be considered upon a change in circumstances, such as the payor spouse's retirement.

had the ability to continue to fund such savings. We are therefore constrained to vacate the alimony award and remand for further consideration by the Family Part consistent with our holding today, with the understanding that we intimate no suggestion as to the outcome of that reconsideration by the court.

> **[At the direction of the court, the discussion of the other issues in this appeal at sections IV, V and VI has been omitted from the published version of the opinion.]**

## VII.

In sum, the trial court's awards of alimony, equitable distribution, child support, counsel fees and costs are vacated and remanded for further proceedings consistent with our decision. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION