**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2439-16T4

E.L.,[1]

     Plaintiff-Respondent,

v.

H.L.,

     Defendant-Appellant.

_____

Argued November 28, 2018 – Decided December 13, 2018

Before Judges Nugent, Reisner, and Mawla.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FM-11-0516-11.

H.L., appellant, argued the cause pro se.

E.L., respondent, argued the cause pro se.

PER CURIAM

---

[1] We use the parties' initials to protect the privacy of their financial information.

Defendant appeals from a January 10, 2017 order entered following a post-judgment plenary hearing, which granted plaintiff a downward modification of his child support and alimony obligations. We affirm.

We take the following facts from the record. The parties were divorced in December 2011, by way of a final judgment, which incorporated a Marital Separation and Property Settlement Agreement (PSA), signed in September 2006, and an addendum dated the same date as the divorce. The PSA required plaintiff to pay twenty percent of his gross income for child support, but not less than $2500, and not more than $6000 per month. The PSA also required him to pay defendant forty percent of his gross income as alimony, but not less than $4000, and not more than $12,000 per month. Since the divorce, and as a result of his earnings, plaintiff paid defendant $18,000 per month, the maximum amount for alimony and child support, until April 2015.

Plaintiff was self-employed with a software development company known as "Outpost." The parties were partners in the company, wherein plaintiff held a ninety percent interest and defendant the remaining ten percent. The parties' ownership of Outpost continued post-judgment.

In April 2015, Outpost's largest customer, responsible for approximately ninety-five percent of Outpost's revenue, terminated its relationship with

Outpost, and as of May 2015, Outpost had no revenue. Plaintiff immediately contacted defendant seeking a modification of his support obligation. Plaintiff also ceased paying defendant the maximum support amounts because of the drop in his income.

As a result, defendant filed a post-judgment motion to compel payment at the maximum amount and plaintiff filed a motion to modify his obligation. The motion judge denied defendant's motion and granted plaintiff's motion, finding he had demonstrated a prima facie showing of changed circumstances, and scheduled a plenary hearing, in pertinent part, to address the modification of alimony and child support. Defendant did not appeal from the order entered by the motion judge.

The plenary hearing occurred over two days, before a second judge. Plaintiff testified his income in 2014 was $425,688. He explained, before he started Outpost, he was employed as a senior software engineer and project manager. Following the demise of Outpost, he testified he searched for employment within his area of expertise and had two offers for part-time employment. Those positions offered salaries of $96,000 and $72,000 per year, which he planned to accept, bringing his total earnings to $168,000. Plaintiff

A-2439-16T4

testified the combination of the salaries from these part-time jobs would be greater than what he could earn as a full-time employee.

Utilizing plaintiff's credit card statements, defendant's cross-examination attempted to prove that plaintiff's lifestyle did not suffer an adverse change in circumstances. Specifically, defendant pointed to plaintiff's restaurant dining, the purchase of jewelry, travel abroad, and the purchase of a Tesla vehicle as evidence of his lifestyle. Defendant noted plaintiff had purchased a home in Minsk, Belarus. She argued plaintiff's lifestyle was supported by an undisclosed source of income.

However, plaintiff rebutted those assertions. He proved the residence in Minsk had been purchased by A.M.[2] with her pre-marital funds, explained he had used airline points for personal travel, and the jewelry purchase was a favor for a friend who reimbursed him. The trial judge noted the evidence also demonstrated defendant's proofs regarding the restaurant expenditures were mathematically incorrect and her exhibits in general were incomplete.

Defendant also challenged plaintiff's testimony regarding his employment search. She claimed the offers he received did not "reflect his ambition" or his skill set. Defendant argued plaintiff's circumstances and Outpost's prospects

_____

[2] Plaintiff married A.M. in September 2013.

had not permanently changed because he was likely to meet new business partners or receive better offers. However, defendant presented no evidence to corroborate her hypothesis, or expert testimony to explain her claims regarding plaintiff's earning capacity.

Conversely, plaintiff adduced objective evidence of defendant's earning capacity. He introduced a copy of her LinkedIn profile, in which she claimed to be a talent manager and a wardrobe stylist for a television show. Defendant's profile also disclosed she had obtained two Associate's degrees, and could speak English, Russian, Belarusian, intermediate French, and conversational Hebrew.

Defendant explained her work as a wardrobe stylist and talent manager was unpaid, and the latter position was taken only to assist her daughter who was an actress. She claimed she was seeking employment, but could not obtain a paying position. She presented evidence of her search for employment, namely, job applications to Hermes Paris, Burberry, Chanel, Time Warner, HBO, and Gucci, for the period between October 27 and November 4, 2015. Defendant testified she had ceased searching for employment, as of November 4, 2015, because she was focused on preparing for trial.

The trial judge concluded plaintiff had testified credibly regarding his income, job search, and earning capacity, and $170,000 was a reasonable

amount of income to impute to him based on the evidence presented.  Relying on the proofs presented regarding defendant's income, the judge concluded "[b]ased on the wage compendium, the entry level income for a . . . wardrobe stylist in [New York City] . . . is $43,900."

The judge found defendant's needs for herself and the children totaled $6908 per month.  The judge ordered plaintiff to pay defendant $3500 and $1105 per month in alimony and child support, respectively.  Combining defendant's imputed income with the support, the judge concluded "pre-tax, [d]efendant should have monthly income available to her of [$7938]."  The judge noted this calculation did not include rental income defendant had been receiving by renting the former marital residence, which she had failed to disclose on her Case Information Statement.  This appeal followed.

## I.

At the outset, we note defendant raises several arguments on appeal regarding enforcement of the January 10, 2017 order, and the parties' motion practice subsequent to the entry of the order on appeal.  Defendant also argues plaintiff did not establish changed circumstances to warrant a modification of support because following entry of the January 2017 order, plaintiff's business fortunes rebounded.  She asserts this information impacts the income imputation

A-2439-16T4

the trial judge made to plaintiff. She argues her September 8, 2016 bankruptcy discharge, which occurred after the conclusion of the trial testimony in February 2016, but before the issuance of the court's order in January 2017, was not considered by the trial judge.

We do not consider any of these arguments as they post-date the conclusion of the trial testimony, which defendant did not seek to re-open. "[I]ssues not raised below will ordinarily not be considered on appeal unless they are jurisdictional in nature or substantially implicate the public interest." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 339 (2010) (citing Cty. of Essex v. First Union Nat'l Bank, 186 N.J. 46, 51 (2006)); see also Neider v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (absent plain error leading to the possibility of an unjust result, the Appellate Division generally declines to consider arguments not raised at trial). None of the aforementioned information was presented to the trial judge, and is not part of the record before us.

Instead, we address defendant's arguments that: 1) plaintiff failed to prove changed circumstances; 2) the trial judge erred in making an income imputation; 3) the support awarded did not meet defendant and the children's needs; and 4) child support could not be modified because the parties contracted to apply

<u>Lepis</u>[3] modifications only to alimony. To the extent we do not address other arguments raised by defendant, it is because they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

II.

"The scope of appellate review of a trial court's fact-finding function is limited. The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." <u>Cesare v. Cesare</u>, 154 N.J. 394, 411–12 (1998) (citing <u>Rova Farms Resort, Inc. v. Inv'rs Ins. Co.</u>, 65 N.J. 474, 484 (1974)). The "court must give due recognition to the wide discretion which our law rightly affords to the trial judges," and disturb such determinations only where the court abused its discretion. <u>Larbig v. Larbig</u>, 384 N.J. Super. 17, 21, 23 (App. Div. 2006) (quoting <u>Martindell v. Martindell</u>, 21 N.J. 341, 355 (1956)). Appellate courts reverse only if there is "'a denial of justice' because the family court's 'conclusions are . . . "clearly mistaken" or wide of the mark.'" <u>Parish v. Parish</u>, 412 N.J. Super. 39, 48 (App. Div. 2010) (quoting <u>N.J. Div. of Youth & Family Servs. v. E.P.</u>, 196 N.J. 88, 104 (2008)). This standard applies equally to the trial court's decisions regarding alimony and child support. <u>Lombardi v. Lombardi</u>, 447 N.J. Super. 26, 33 (App. Div. 2016).

_____

[3] <u>Lepis v. Lepis</u>, 83 N.J. 139 (1980).

A.

We first address defendant's claims there were no changed circumstances warranting a review and modification of alimony and child support. Defendant argues plaintiff's expenditures after April 2015 have not reflected his claimed change in circumstances. She asserts plaintiff has an undisclosed source of income from which he meets his expenses.

In support of her claims, defendant points out plaintiff continued to fly his private airplane, even after Outpost failed. She also claims plaintiff took a trip to Puerto Rico in July 2015, during which he rented a private airplane. She cites a variety of trips plaintiff took as evidence that he has undisclosed income.

These arguments are unpersuasive. A review of the record demonstrates a portion of the flights defendant discusses in her brief took place before Outpost failed. This had no bearing on the firm's subsequent difficulties, which caused the motion judge to order a plenary hearing, or the trial judge's conclusion to modify plaintiff's support obligations. Moreover, plaintiff paid the maximum amount of child support and alimony prior to Outpost's failure.

Regarding the flights plaintiff took after Outpost failed, plaintiff testified he had to fly the plane while he still owned it in order to prevent it from falling into disrepair and depreciating in value before he could sell it. Plaintiff also

explained he rented a private airplane in order to maintain "proficiency" because he had to fly the plane at least two hours every month until he could sell it. He explained he needed to keep the plane until its annual inspection in August 2015 because he could sell it for a greater sum with it having passed inspection. Regarding plaintiff's travel, the record demonstrates the evidence presented at the hearing showed the trips were either inexpensive or were paid for by either family members or with frequent flier miles. Defendant presented no evidence to rebut these claims.

Defendant claims plaintiff continued to pay $11,700 per month in rent for his apartment in Manhattan, even after he and A.M. moved to Minsk. She points to plaintiff's testimony regarding his ownership of a Tesla automobile and argues its $1382 monthly payment exceeded his child support obligation. Defendant also notes the vehicle cost $700 per month to park in New York City. However, the record demonstrates plaintiff signed a new apartment lease in August 2015 for $2500 per month and ceased residing in the more expensive apartment. Additionally, defendant neither rebutted the fact plaintiff purchased the Tesla before Outpost's demise, nor demonstrated how plaintiff could cease paying for the vehicle at will. Furthermore, plaintiff testified he ceased paying to keep the

vehicle in New York City as of July 2015, and the record reflects it is stored at the parties' Princeton home.

Defendant also asserts plaintiff's claim the home in Minsk was funded by A.M. is false. However, the record demonstrates plaintiff presented a deed, which showed A.M. purchased the property in November 2011, long before he experienced a financial downturn.

Defendant argues plaintiff founded another company in 2005, and transferred the parties' interest in it to his parents in 2009 without defendant's consent. She claims plaintiff operates the company and derives income from it. At trial, defendant cross-examined plaintiff on the subject, but beyond explaining that he founded the company and owned it until 2008, the record reflects no testimony or evidence to support defendant's claim plaintiff owned or derived income from the company after Outpost experienced a downturn.

Defendant's arguments on appeal do not persuade us that the judge's decision to modify plaintiff's support obligations due to a change in circumstances was an abuse of discretion. There is ample evidence in the record to support the trial judge's conclusions.

We next address defendant's argument regarding the imputation of income to her. Defendant argues the imputation to her was "unrealistically high" because her income from earnings in addition to the modified alimony and child support figures do not meet her needs.[4]

"'Imputation of income is a discretionary matter not capable of precise or exact determination[,] but rather requir[es] a trial judge to realistically appraise capacity to earn and job availability.'" Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015) (citations omitted). In Elrom, we noted the authority to impute income

> is incorporated in the New Jersey Child Support Guidelines (Guidelines). See R. 5:6A (adopting Guidelines set forth in Appendix IX-A to the Court Rules). The Guidelines state:
>
> [i]f the court finds that either parent is, without just cause, voluntarily underemployed or unemployed, it shall impute income to that parent according to the following priorities:
>
> > a. impute income based on potential employment and earning capacity using the

---

[4] We do not address the aspect of defendant's challenge to the income imputation wherein she relies upon her actual income from her employment beginning in February 2017, which she claims was "significantly less" than the one imputed to her, because it was not presented to the trial judge and is not a part of the record before us.

parent's work history, occupational qualifications, educational background, and prevailing job opportunities in the region. The court may impute income based on the parent's former income at that person's usual or former occupation or the average earnings for that occupation as reported by the New Jersey Department of Labor (NJDOL);

b. if potential earnings cannot be determined, impute income based on the parent's most recent wage or benefit record[.]

[Elrom, 439 N.J. Super. at 435 (alteration in original) (quoting Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, cmt. 12 on Appendix IX-A to R. 5:6A at 2635 (2015)).]

"These legal precepts equally apply when establishing a party's obligation to pay alimony." Id. at 435.

Here, pursuant to the wage compendium, the trial judge noted the entry level income for a wardrobe stylist was $43,900 per year. The judge then considered the parties' testimony for and against an imputation, defendant's LinkedIn profile, and what the judge noted was defendant's "claim of having 'vast experience and knowledge of designer clothing, fabrics, and accessories[.]'" The judge concluded "the request of [p]laintiff to impute [d]efendant at an annual income of $40,000 is reasonable."

We are satisfied the judge applied the evidence to the imputation rubric we have recited. The imputation determination was supported by the competent evidence and was not an abuse of discretion. Elrom, 439 N.J. Super. at 434.

C.

Defendant challenges the trial judge's decision on grounds the alimony and child support awards do not meet her and children's needs. As we noted, the judge calculated defendant and the children's monthly needs to be $6908, and found her monthly income would be $7938. Other than to disagree with the result, defendant has not provided us with a basis to conclude her needs and those of the children were not met. This does not establish an abuse of discretion.

D.

Finally, defendant argues the child support was not subject to modification because the PSA did not explicitly permit it. The Supreme Court has long stated: "[t]he equitable authority of a court to modify support obligations in response to changed circumstances . . . cannot be restricted." Lepis, 83 N.J. at 149 (citing Smith v. Smith, 72 N.J. 350, 350 (1977)); see also N.J.S.A. 2A:34-23.

Here, the PSA expressly states plaintiff's child support obligation is "[s]ubject to the power of the court to modify these terms." Therefore, the trial

judge could modify plaintiff's support obligations. Even where there is express language barring a modification based on a change in circumstances, the court is not without the ability to modify an agreement. See Morris v. Morris, 263 N.J. Super. 237, 245-46 (App. Div. 1993).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2439-16T4