**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4661-16T3

BARBARA A. DAVIS,

     Plaintiff-Respondent,

v.

EDGAR K. DAVIS,

     Defendant-Appellant.

_____

          Submitted September 13, 2018 – Decided October 23, 2019

          Before Judges Nugent and Mawla.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FM-08-0719-16.

          Stacy L. Spinosi, attorney for appellant.

          Puff & Cockerill, LLC, attorneys for respondent (Christine Casullo Cockerill, on the brief).

     The opinion of the court was delivered by

NUGENT, J.A.D.

Defendant, Edgar K. Davis, appeals from a Final Judgment of Divorce (FJOD). He contends the trial court erred when it determined plaintiff Barbara A. Davis' inheritance was immune from equitable distribution and when it found plaintiff's testimony was more credible than his. He also claims the trial court erred in its alimony determination and abused its discretion when it awarded plaintiff counsel fees. Our consideration of defendant's arguments, the record, and applicable legal principles leads us to conclude the trial court neither erred nor abused its discretion. Hence we affirm.

I.

The parties were married for nearly thirty-four years when plaintiff filed a divorce complaint. Defendant filed an appearance and requested to be heard on "questions of alimony, division of assets and debt, determination of assets to be excluded from the marital estate, counsel fees and costs." Following trial, the court filed a written decision and entered an order, which it amended twice. Defendant appealed from the FJOD.

The parties and Helen Rowe were the only trial witnesses. The parties developed the following proofs. They married on June 26, 1982, when plaintiff was thirty-nine years old and defendant was fifty-three. This was plaintiff's third marriage and defendant's second. Plaintiff had an adult daughter by a previous

2

marriage. Defendant is elderly and required the use of a wheelchair and hearing aids. Defendant asked long-time family friend Helen Rowe to act as his caregiver since his two children lived a couple hundred miles away. She spends about ten hours each week to do his grocery shopping, change his bedding, collect his mail, clean his home, bring him meals and give him showers.

Plaintiff testified that early in the marriage, she opened two certificates of deposit (CDs) with money she saved each year at harvest time on defendant's family farm. According to plaintiff, defendant "didn't want anything to do with" handling the family finances, so he allowed her to handle them.

Plaintiff, as sole beneficiary, received $162,000 in life insurance proceeds and some other assets after her daughter died in January 2010. She deposited the insurance proceeds into the parties' joint checking account and used the money to pay for her daughter's funeral, as well as her daughter's obligations, which included a car, a mortgage, and several credit cards.

Two months after plaintiff's daughter died, the parties decided to move from Pennsylvania to New Jersey. When they moved, they had not sold their Pennsylvania home, so plaintiff agreed to advance $99,000 of the life insurance proceeds to purchase the parties' mobile home. The parties' Pennsylvania home

sold in September 2010. The proceeds from the sale were deposited into the parties' joint account.

Plaintiff testified that she had the following discussion with defendant sometime after she used the life insurance proceeds to pay for the mobile home:

> And then it wasn't long after that he came to me and he said he didn't think it was his home.
> And I says, "Why?"
>
> And he said, "Because you paid for it with Denise's money that she left you. It wasn't my money."
>
> And I says, "Well," I said, "We weren't going to make settlement yet," I said, "and this is when we were going to make settlement here."
>
> So I thought about it, and I said, "Well, when we make settlement in Pennsylvania I'll take my money back."
>
> And he said, "That's what I want you to do."
>
> So I believe it was September after we were finished up there and we made [a] settlement. And I told him that's what I was going to do. And I took my money back and put it in a CD. And he said, "This is what I want you to do."

Plaintiff testified that following the sale of their Pennsylvania home she withdrew $100,000 from the joint account and opened a CD in her name alone for $154,995.95. Plaintiff testified that defendant was aware that she put the money into a CD. Plaintiff could not recall why she opened a CD for

4

$154,995.95 when the life insurance policy was for $162,000. Plaintiff also could not explain why she withdrew only $110,000 from the account, but opened a CD for $154,995.95.

Defendant testified that he only learned during the divorce proceedings that there was a CD in plaintiff's name alone for $154,995.95. Defendant later testified that he did not follow all plaintiff's banking transactions and that sometimes, when he noticed money missing, he would ask her about it, and she would respond, "I'm not going to tell you" or "I don't have to tell you anything." He also testified he looked at bank statements in 2010 but "didn't question where the money went. It went and that was it and I didn't question it." He testified that he knew about the life insurance policy, but did not inquire about the life insurance proceeds coming out of the joint account because he thought "she was putting it away for [the parties'] retirement."

According to plaintiff, the bank statements were placed on a table in the parties' home every month and defendant could look at them whenever he wished. Plaintiff also testified that she kept the bank records in a shoebox in the parties' marital bedroom.

The trial court found plaintiff's testimony credible; "forthright and not exaggerated." The court found that plaintiff's "accuracy of recollection was clearly superior to [d]efendant's."

The court determined that plaintiff's testimony regarding the life insurance proceeds received from the death of her daughter was "particularly credible." According to the court, "[t]he accuracy of her recollection on this issue was impressive and her version of events was inherently believable, especially when considered in conjunction with [d]efendant's testimony on this subject." The court credited most of plaintiff's testimony, with some minor exceptions.

Conversely, the court found defendant's "accuracy of recollection" was clearly not as strong as plaintiff's. The court found defendant's testimony was "replete with numerous failures to recall any specifics," and that it was "somewhat evasive and lacked detail." According to the court, "[o]n several occasions, [defendant] would change his testimony," which led the court to believe that his testimony was inconsistent.

The court did not find defendant "intentionally deceptive." Rather, the court found defendant "simply ha[d] a very poor accuracy of recollection," and that "due to the numerous inconsistencies[,] the [c]ourt [could not] credit very

6

much of his testimony, especially any testimony that [was] in opposition to testimony offered by [p]laintiff."

Based on the evidence, both disputed and undisputed, and the court's credibility findings, the court determined the following assets were subject to equitable distribution: the marital coverture portion of defendant's PERS pension; the two CDs in joint names; plaintiff's pension; certain cash in plaintiff's possession; and proceeds from a joint money market account.

The court found that plaintiff's daughter's net estate proceeds, which totaled $204,596.46, were exempt from equitable distribution. The court ruled that the CD worth $154,995.95 was to remain in plaintiff's sole name and was not subject to equitable distribution.

In sum, the court found that plaintiff owed defendant $37,302.96, and that defendant owed plaintiff $74,042.82, which included $10,000 in counsel fees. Thus, the court found defendant owed plaintiff the net sum of $36,739.86, and ordered that defendant pay this amount to plaintiff within fourteen days of the date of the order.

Concerning spousal support, the court found that defendant's social security income was $1066 per month after deducting Medicare Part B. The court determined defendant would also receive $398 per month in pension

A-4661-16T3

income not subject to equitable distribution, and that defendant's total income for alimony analysis purposes was $1464 per month.

The court concluded that, living apart and supporting two households, neither party would come close to enjoying the marital lifestyle, which required $2287 per month. Although plaintiff had a need for alimony, defendant did not have the ability to pay it, based on his income. Ultimately, the court found that an alimony award of $50 per week was "fit, reasonable and just."

Concerning counsel fees, the court found that defendant's total monthly income put him in a "far superior financial condition" to plaintiff, whose total monthly income was $747. The court also found, however, that the parties would be in similar financial positions after equitable distribution. Noting both parties had limited ability to make payments toward their counsel fees, the court nonetheless found defendant in a better position to do so.

The court also found defendant's litigation strategy somewhat unreasonable and that it caused plaintiff to incur unnecessary counsel fees. For example, the court commented that defendant's "position that plaintiff had been hiding her social security income and not deposit[ing] it into the parties['] joint marital account" was "unfounded," yet defendant had spent "significant trial time putting forth this ridiculous position." Defendant's exhibits were missing

many bank statements, and defendant "aggressively cross-examined [p]laintiff about [existing] statements" because they did not show plaintiff's social security check being deposited. Yet, plaintiff provided a complete copy of all the parties' joint marital bank account statements, which revealed there were two deposit records reflecting plaintiff's social security checks being deposited. The court described defendant's efforts as, in their best light, "very sloppy," or in their worst light, "extreme bad faith."

In addition, the court found defendant's alimony position unjustified. Based on the court's pendente lite alimony award, defendant knew the judge might order him to pay alimony. The court also found that a $563 difference in their respective social security incomes, when plaintiff received only $503 per month, was "much more than nominal."

Each party incurred more than $20,000 in counsel fees. Plaintiff was "clearly more successful" with regard to the results obtained. Ultimately, after balancing all relevant factors, the court specifically did not find it appropriate to assess all of plaintiff's fees against defendant. Instead, the court awarded plaintiff $10,000 in counsel fees.

II.

Defendant first argues plaintiff failed to meet her burden of proving that the money she inherited "was immune from equitable distribution." Although defendant concedes "gifts, inheritances, devises, and intestate succession are excluded from equitable distribution," he asserts that inter-spousal gifts are subject to equitable distribution. He also notes that an asset initially exempt from equitable distribution may become subject to distribution if the parties intended it to be a marital asset. Acknowledging there were disputed facts as to the intent of the parties concerning the money plaintiff received from her daughter's insurance, defendant essentially argues the trial court's resolution of the dispute and credibility determinations are unsupported by the record. Defendant asserts "the record does not support a finding there was no credible evidence the parties intended the inheritance to be marital property," and "[t]he record clearly shows the opposite." Defendant also claims the court erred by valuing plaintiff's inheritance at the time of its receipt rather than at the time the complaint was filed.

Appellate review of the trial court's determination in dissolution matters is limited. Lombardi v. Lombardi, 447 N.J. Super. 26, 32 (App. Div. 2016). We review with deference the court's factual findings because of the court's

"superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012). Thus, we will not disturb the trial court's decision if it is "supported by substantial credible evidence and [is] consistent with applicable law." Lombardi, 447 N.J. at 33. A trial court's interpretation of the law and the "legal consequences that flow from established facts," however, are "not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995).

Assets exempt from equitable distribution may become subject to equitable distribution if the recipient intends them to become marital assets. See Weiss v. Weiss, 226 N.J. Super. 281, 287 (App. Div. 1988). The comingling of such assets with marital assets, however, is not necessarily dispositive of the issue. The assets remain the recipient spouse's property absent evidence the parties intended them to become marital property. See Wadlow v. Wadlow, 200 N.J. Super. 372, 380 (App. Div. 1985).

Here, indisputably, there was a sharp conflict between plaintiff's and defendant's testimony concerning the life insurance proceeds plaintiff received following her daughter's death. The trial court resolved it in favor of plaintiff.

A-4661-16T3

Defendant spends a good portion of his brief strenuously arguing "the trial court abused its discretion in finding plaintiff credible." To be sure, there were conflicts and inconsistencies in the testimony of both parties. Our task, however, is not to second-guess the factfinder's resolution of conflicting or inconsistent testimony. Rather, our standard of review requires that we defer to the trial court's fact finding when it is supported by adequate, substantial, credible evidence. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Here, there was ample credible evidence in the record to support the trial court's credibility and factual determinations. Defendant's remaining arguments concerning the insurance proceeds plaintiff received upon the death of her daughter and the trial court's credibility determinations are without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

## III.

Defendant contends the trial court erred "by failing to consider the amount of money and assets retained by plaintiff in equitable distribution when determining alimony, and further abused its discretion by ordering defendant to pay alimony after finding he did not have the ability to pay." Defendant's argument is not unlike his previous arguments concerning the trial court's credibility determinations.

In essence, defendant quarrels with the weight the court gave to the respective factors enumerated in the alimony statute, N.J.S.A. 2A:34-23(b). Defendant insists the court overlooked certain of plaintiff's assets, and certain needs defendant had in consequence of plaintiff no longer being available to provide such services.

Weighing the various factors and considerations concerning alimony is a task vested solely within the trial court's discretion. We will not disturb the trial court's findings unless the trial court has "clearly abused its discretion, failed to consider all of the controlling legal principles, or [unless we] otherwise [are] well satisfied that the findings were mistaken or that the determination could not reasonably have been reached on sufficient credible evidence present in the record after considering the proofs as a whole." Heinl v. Heinl, 287 N.J. Super. 337, 345 (App. Div. 1996) (citing Rolnick v. Rolnick, 262 N.J. Super. 343, 360 (App. Div. 1993)).

Here, the record refutes defendant's arguments. Considering defendant's arguments in view of the record and our standard of review, we find no basis for disturbing the trial court's alimony award.

IV.

Last, defendant argues that the court abused its discretion by awarding plaintiff counsel fees. The court's factual basis for the award of fees is amply supported by the record, and the court's rationale for awarding fees is legally sound. Defendant's arguments to the contrary are without sufficient merit to warrant further argument. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION