**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1873-22

LISA REMY,

    Plaintiff-Respondent,

v.

NKOSI REMY,

    Defendant-Appellant.

_____

> Submitted March 6, 2024 – Decided July 8, 2024
>
> Before Judges Vernoia and Walcott-Henderson.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FM-07-1673-19.
>
> Nkosi Remy, appellant pro se.
>
> Respondent has not filed a brief.

PER CURIAM

In this post-judgment matrimonial action, defendant Nkosi Remy appeals from a January 20, 2023 Family Part order denying his motion for

reconsideration of the court's alimony award to plaintiff, Lisa Remy, his former spouse. Defendant argues the court erred in calculating alimony and failed to correctly calculate and apply a credit based on the difference between the amount of pendente lite support and alimony under Mallamo v. Mallamo, 280 N.J. Super. 8 (App. Div. 1995). Finding no merit to defendant's arguments, we affirm.

We recount the facts based on the scant record before us in defendant's brief and appendix.[1] Plaintiff filed no responsive brief. The parties were married on December 11, 2013, and plaintiff filed a complaint for divorce on January 9, 2019. There are two children born of the marriage who were unemancipated at the time of the entry of the final judgment of divorce (FJOD), one born in February 2015 and the other, born in September 2016.

During the pendency of the divorce, plaintiff sought pendente lite support from defendant, which the court granted in its order of July 15, 2020, in the total amount of $3,875 per month—$2,875 for Schedule A and B expenses and $1,000

---

[1] The record on appeal does not include transcripts of pertinent court proceedings, or pleadings filed in support and opposition to prior motions. See generally R. 2:6-1(a) (specifying those portions of the trial court record that must be included in the record on appeal). In addition, due to plaintiff's failure to file a timely answering brief, this court issued an order on September 11, 2023 suppressing "any brief or other papers" submitted by plaintiff with the exception of a motion to vacate the suppression order. No motion was filed.

for unallocated support. The court calculated the pendente lite support based on plaintiff's Schedule A and B expenses, including but not limited to, the mortgage, taxes, insurance, utilities, and car insurance costs reflected in plaintiff's Rule 5:5-2 case information statement (CIS).[2] The additional unallocated support for plaintiff and the children in the amount of $1,000 per month was to be paid to Probation via income withholding.

On October 20, 2020 plaintiff moved to enforce litigant's rights under Rule 1:10-4 to compel defendant to pay pendente lite support. On May 13, 2021, the court ordered defendant to bring the mortgage, taxes and other pendente lite obligations current consistent with its July 15, 2020 order. Defendant paid a total of $27,688.57 towards plaintiff's Schedule A and B expenses. However, defendant ceased making any additional payments towards the Schedule A and B expenses as of October 2021.[3]

---

[2] Pursuant to Rule 5:5-2(a), a CIS "shall be filed and served in all contested family actions . . . in which there is any issue as to . . . support, alimony[,] or equitable distribution."

[3] According to the trial court's opinion, as of July 2022, defendant had paid $23, 815.46 in unallocated support to Probation via income withholding. The court found although defendant was ordered to pay $1,000 in unallocated support beginning January 2020, defendant's income withholding did not commence until August 2020, which resulted in a deficit for the period where no payments were made. Additionally, with only $923.08 in income withholding each month,

 A-1873-22

After several conferences and adjournments of scheduled trial dates, trial commenced on February 16, 2022, on issues of equitable distribution, alimony, and child custody and support. Following a three-day bench trial, the court issued a comprehensive and well-reasoned thirty-eight-page opinion wherein it addressed the issues of equitable distribution, alimony, child custody and support and made findings of facts and conclusions of law supporting its decision granting the FJOD.

In considering the parties' marital lifestyle, the court found they lived modestly based on their respective incomes and assets. From 2013 to 2017 plaintiff worked in human resources, earning between $34,000 and $40,000 annually. Plaintiff did not work between 2017 and 2019, but attended Rutgers University and earned her bachelor's degree in 2018. In 2019, she became a teacher, earning $20,868 annually. Defendant is a sales representative at Fidelity National Title Insurance with a base salary of $105,000 plus a twenty-percent commission. For the five-year period between 2017 and 2021, defendant earned an average salary of $117,481.

---

defendant incurred a monthly balance of $76.92 resulting in arrears balance of $6,184.54 as of June 30, 2022.

Regarding the marital home, the court found plaintiff's mother had purchased the former marital home through her holding company, Francis and Remy Holdings, LLC, for $115,00. From November 2015 to May 2016, Francis and Remy Holdings, LLC paid the $644 monthly mortgage. In March 2018, Francis and Remy Holdings, LLC deeded the property to plaintiff and plaintiff's mother. Plaintiff's mother passed away on July 10, 2018, resulting in the devising of the property to plaintiff. It is undisputed that defendant had been paying the mortgage on the home since 2018 in the amount of $1,100. It was also undisputed that plaintiff's mother provided some financial support, including paying a portion of the parties' utility expenses, and assisted with childcare until she became ill.

Defendant has a 401k, but its value at trial was unknown. There was evidence he had withdrawn money from that account. Plaintiff had leased a BMW for $560 per month and defendant drove a 2005 Jeep Grand Cherokee, which the trial court noted had been paid off. The court also considered that the parties did not take regular vacations. The court concluded the parties had no joint marital debt, but each had student loan debt: plaintiff had approximately $30,000 and defendant had approximately $250,000. During the pendente lite

period, defendant separately purchased a six-bedroom home although there was no testimony regarding a mortgage on this property.

In setting the alimony award, the court found defendant to be the primary wage earner throughout the marriage, earning an average income of $117,481 over a five-year period. The court found both plaintiff and defendant had the capacity to earn a living without requiring additional education.

In setting the alimony award, the court found plaintiff's actual household budget was "about $4,462 per month not including private school tuition of $762 per month" and rejected defendant's argument plaintiff's budget was $2,900 per month. The court also considered that plaintiff had sought alimony in the amount of $500 per week for a period of five years while defendant had contested plaintiff's need for alimony.

The court awarded plaintiff limited durational alimony, concluding it "is intended for short-term marriages where an economic need has been established." The court concluded, "[t]his form of alimony is appropriate here because [p]laintiff has demonstrated a need for economic assistance from [d]efendant. . . . and [d]efendant has the ability to provide [p]laintiff assistance. . . . He earns on average $117,000 per year compared to [p]laintiff's current yearly income of $26,436." The court declined to impute $40,000 in income to

6

plaintiff based on her earning history which showed she had only earned in excess of $40,000 in one year, 2015.  Instead, the court used plaintiff's 2021 salary for purposes of calculating alimony.[4]

Regarding credits, the court found plaintiff was entitled to a "credit in the amount of $61,870.97 from [d]efendant's share of the assets, which represents the total towards the [p]endente [l]ite support not paid during the [p]endente [l]ite two and a half [] year period."[5]  The court stated:

> Defendant, by his own admission, ceased paying his Schedule A and B support obligations in October 2021, but $923.08 is withheld from his income monthly for the unallocated support award, leaving an arrears balance of $6,184.54 as of June 30, 2022.  Based upon the July 15, 2020 [o]rder, [d]efendant owed $60,375.00 for Schedule A and B expenses from January 2020 through October 2021.  The amount due and owing for [p]laintiff's schedule A and B expenses beyond November 2021 through June 2022 is calculated to be $23,000 for eight months since his last payment for a total of $83,375.  Defendant has paid $27,688.57 and therefore owes $55,686.43 from January 2020 through June 2022.  In addition, [defendant] is in arrears of $6,184.54 for the unallocated support paid through

---

[4]  Plaintiff's yearly salaries fluctuated greatly leading up to the judgment of divorce, earning $14,074 in 2017, $40,000 in 2018, $12,762 in 2019, $10,329 in 2020, and $26,436 in 2021.

[5]  In addition, the court also found plaintiff was entitled to a credit of $15,674 from defendant's share of assets which represents the fair market value of plaintiff's BMW.

probation. Therefore, the [p]laintiff is entitled to a <u>Mallamo</u> credit of $61,870.97.

The court awarded plaintiff alimony in the amount of $1,857.50 per month for a five-year term, which was the length of the marriage, beginning August 1, 2022. The court also ordered defendant to continue paying plaintiff pendente lite support, consistent with its prior order, in the amount of $2,875 to cover the Schedule A and B expenses plus $1,000 per month in unallocated support until July 31, 2022. With respect to child support, the court ordered defendant to pay $172 per week via income withholding through Probation effective August 1, 2022. The court, recognizing the likely financial impact of its award on the parties, stated that "[a]lthough this diminishes defendant's standard of living, [p]laintiff will have no greater improvement in her lifestyle. . . . [p]laintiff and [d]efendant will have to find ways to limit their expenses and seek any additional income, if possible."

Defendant moved for reconsideration of the July 19, 2022 FJOD, arguing the court erred in its alimony calculation by including income earned after plaintiff filed the complaint for divorce and incorrectly determining the marital lifestyle, and abused its discretion by denying him a <u>Mallamo</u> credit for

overpayment of pendente lite support,[6] failing to equally distribute twenty-five percent of the marital home to him, incorrectly calculating child support, and failing to credit him for utility payments made during the pendente lite period.

The court denied defendant's motion for reconsideration in an order dated January 20, 2023. In its statement of reasons, the court concluded "defendant was simply dissatisfied with [its] decision" which is not a basis for reconsideration under Rule 4:49-2. In addressing each of defendant's arguments, the court concluded there was no legal support for his claim alimony should have been based on the average of his income only as stated on his tax returns and other financial documents from prior to the divorce. The court further rejected defendant's remaining arguments citing a lack of legal support and reasoning as to how the court failed to consider the evidence that had been before it at trial. In addressing defendant's argument the court erred by failing to consider healthcare costs paid by him in the child support determination, the court noted, these "costs were not factored in because they were not provided"

---

[6] Additionally, defendant also argued the court erred by failing to consider plaintiff's BMW car, which had been stolen, was returned to plaintiff with minor damage and therefore "it would be unjust to award [] [p]laintiff $15,000 dollars for a vehicle that was not dissipated."

and the new information defendant wished the court to consider is not appropriate for a motion for reconsideration. This appeal followed.

I.

On appeal, defendant reprises several of the same arguments concerning the court's alimony determination and his entitlement to a Mallamo credit. First, referring to the court's decision on the motion for reconsideration, defendant argues the court based its decision on a "palpably incorrect basis" in denying him a "Mallamo credit based on the vast difference in the pendente lite award, and final alimony award determination." Defendant argues he is entitled to a "[M]allamo credit of $2,605 per month retroactive from January, 2020, the beginning of [p]endente [l]ite period to July 19, 2022, the end of trial," which is the difference between the amount of pendente lite support and the final alimony amount awarded to plaintiff in the FJOD—$1,857.50 per month.[7] We disagree.

The trial court's decision to deny a motion for reconsideration under Rule 4:49-2 is reviewed for an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (citing Kornbleuth v. Westover, 241 N.J. 289, 301

_____

[7] As will be discussed later in this opinion, defendant also argues in other parts of his brief that he is entitled to a Mallamo credit of $2,047.50 per month retroactive from January 2020 to July 19, 2022. This amount represents the difference between his $3,875 monthly pendente lite support payment and the final alimony award of $1,857.50.

(2020)).  Moreover, the factual findings and legal conclusions reached by a Family Part trial judge will not be set aside unless the court is "'convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice' or . . . we determine the court has palpably abused its discretion." Parish v. Parish, 412 N.J. Super. 39, 47 (App. Div. 2010) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)).  However, no special deference is owed to the trial court's conclusions of law.  Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citations omitted).

"Whether alimony should be awarded is governed by distinct, objective standards defined by the Legislature in N.J.S.A. 2A:34-23(b)." Gnall v. Gnall, 222 N.J. 414, 429 (2015); Crews v. Crews, 164 N.J. 11, 24 (2000).  "[T]he Legislature gave courts substantial discretion in determining whether to grant alimony and in setting the amount and form in which to grant it." Jacobitti v. Jacobitti, 135 N.J. 571, 575 (1994).  The factors are as follows:

> (1) The actual need and ability of the parties to pay;
>
> (2) The duration of the marriage or civil union;
>
> (3) The age, physical and emotional health of the parties;

(4) The standard of living established in the marriage or civil union and the likelihood that each party can maintain a reasonably comparable standard of living, with neither party having a greater entitlement to that standard of living than the other;

(5) The earning capacities, educational levels, vocational skills, and employability of the parties;

(6) The length of absence from the job market of the party seeking maintenance;

(7) The parental responsibilities for the children;

(8) The time and expense necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, the availability of the training and employment, and the opportunity for future acquisitions of capital assets and income;

(9) The history of the financial or non-financial contributions to the marriage or civil union by each party including contributions to the care and education of the children and interruption of personal careers or educational opportunities;

(10) The equitable distribution of property ordered and any payouts on equitable distribution, directly or indirectly, out of current income, to the extent this consideration is reasonable, just and fair;

(11) The income available to either party through investment of any assets held by that party;

(12) The tax treatment and consequences to both parties of any alimony award, including the designation of all or a portion of the payment as a non-taxable payment;

A-1873-22

(13) The nature, amount, and length of pendente lite support paid, if any; and

(14) Any other factors which the court may deem relevant.

[N.J.S.A. 2A:34-23(b).]

The standard of review of an alimony award is narrow—a trial court has broad, but not unlimited, discretion, which must take into account the factors set forth in N.J.S.A. 2A:34-23(b) and case law. Steneken v. Steneken, 367 N.J. Super. 427, 434 (App. Div. 2004), aff'd in part, modified in part, 183 N.J. 290 (2005); J.E.V. v. K.V., 426 N.J. Super. 475, 485 (App. Div. 2012). Therefore, we will not disturb an alimony award if the trial judge's conclusions are consistent with the law and not "manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice." Foust v. Glaser, 340 N.J. Super. 312, 316 (App. Div. 2001).

## II.

We start our review of the Family Part's comprehensive decision by addressing defendant's claim he is entitled to a credit of $2,047.50[8] per month

---

[8] In another part of his brief, defendant argues he is entitled to $2,605 per month with no explanation for the discrepancy. It appears defendant relies on an incorrect figure as he owed $3,875 monthly during the pendente lite period, not

covering the pendente lite period from January 2020 to the July 2022 trial. Although not entirely clear from defendant's brief, his calculations appear to be based on the difference between the amount of his monthly pendente lite spousal and child support $3,875 and the final monthly alimony award of $1,857.50, not including child support.

Irrespective of how defendant calculates his perceived credit, however, we perceive no error in the court's decision warranting reversal and conclude defendant's argument he is entitled to a credit by virtue of the difference in pendente lite support and final alimony award is wholly without merit because he is comparing "apples to oranges:" total pendente lite support of $3,857, inclusive of Schedule A and B expenses in addition to $1,000 in unallocated support, versus alimony as determined by the court following trial of $1,857.50.

Pendente lite awards consist of "temporary financial support pending the resolution of the [matrimonial litigation]" and "are subject to modification prior to entry of final judgment and at the time of entry of final judgment." Mallamo, 280 N.J. Super. at 12 (citations omitted). Mallamo therefore authorizes a trial judge to adjust a pretrial award after considering the evidence and credibility of

---

$4,462, on which he bases some of his calculations. The $4,462 figure to which defendant refers is the amount the trial court determined was plaintiff's monthly budget.

the parties, when a judge is in a better position to determine whether the means of the parties align with the pretrial award. Id. at 16. Mallamo, however, does not require courts to re-assess pretrial orders after trial, as defendant claims.

Moreover, our review of the court's denial of defendant's request for a Mallamo credit is limited as "[a]ny changes in the initial orders rest [in] the trial judge's discretion." Slutsky v. Slutsky, 451 N.J. Super. 332, 368 (App. Div. 2017). And, a retroactive change "in the ordered pendente lite support should be considered when the amount initially awarded based on limited information at the inception of a matrimonial matter is later determined 'woefully inadequate' or 'obviously unjust' once all facts and circumstances are fleshed out at trial." Id. at 368-69.

Applying Mallamo, defendant fails to establish that the pendente lite support order which was temporary in nature and reflected the needs of the spouse seeking support at the time it was entered, warranted modification following trial. Defendant claims, based on what he refers to as "dicta" from our decision in S.W. v. G.M., 462 N.J. Super. 522, 534 (App. Div. 2020), he is entitled to a Mallamo credit of $2,605 per month retroactive to January, 2020, the beginning of pendente lite period, to July 19, 2022, the end of trial.

15

According to defendant, the court erred by not applying a credit for all of his pendente lite payments as a matter of law because "the pendente lite support paid was clearly far greater than the matrimonial standard of living[.]"  He contends this amount equates to the difference between the pendente lite award of $3,875 and the final alimony award of $1,857.50.  As such, he claims he is entitled to a credit of $64,325 due to his overpayment of $2,605 per month during the pendente lite period.  Defendant's argument, however, ignores the undisputed fact that he failed to pay a substantial amount of court-ordered pendente lite support from October 2021 to June 30, 2022, for which he cannot now claim a credit.

Here, in addressing alimony and any credits due defendant, the court specifically found "[d]efendant, by his own admission, ceased paying his Schedule A and B support obligations in October 2021, but $923.08 was withheld from his income monthly for the unallocated support award, leaving an arrears balance of $6,184.54 as of June 30, 2022" and "[b]ased upon the July 15, 2020 [o]rder, . . . [d]efendant owed $60,375.00 for Scheduled A and B expenses from January 2020 through October 2021."  The court further found "[t]he amount due and owing for [p]laintiff's Schedule A and B expenses from November 2021 through June 2022 . . . to be $23,000 for eight months since

16

[defendant's] last payment for a total Schedule A and B amount of $83,375."

Having paid $27,688.57 of his total obligation, the court determined defendant owed $55,686.43 for the period from January 2020 through June 2022 in addition to $6,184.54 in unallocated support—the balance due from income withholding from his employer which was processed via Probation and which resulted in an underpayments of the monthly amount due.

We also note defendant raises but does not support his arguments he is entitled to a credit by providing any of his own calculations, or by demonstrating how the court erred in its calculations. Rather, defendant merely argues the court "must consider whether the amount of pendente lite support paid was consistent with the marital lifestyle." In making this argument, defendant seeks to persuade us that because he only paid the mortgage on the former marital residence, his spousal support obligation should have been limited to the mortgage payment of approximately $1,100 per month.

This argument, however, is wholly unsupported by law. In determining support, the court was required to consider the parties' budget and the needs of the parties as set forth in the parties' CISs pursuant to Rule 5:5-2 in order to maintain the status quo. See Lombardi v. Lombardi, 447 N.J. Super. 26, 39-40 (App. Div. 2016) (reiterating that "the revised form is required in all actions

involving alimony, and copies must be preserved by the parties as evidence of the marital standard of living at the time the award was made.") (quoting R. 5:5-2(e)(3)); see also Crews, 164 N.J. at 27 (stating "the CIS information generally reflects a more current financial picture of the parties.").

Defendant offers no proof that the pendente lite awards were too high, based on incorrect information or calculations, were woefully inadequate, or obviously unjust once all facts and circumstances were "fleshed out at trial." Slutsky, 451 N.J. Super at 368-69. Rather, defendant apparently relies solely on his claim the court should have accepted that his contribution to the household during the marriage was $1,100 per month for the mortgage and plaintiff's mother assisted them with other expenses, to suggest that plaintiff could have otherwise met her monthly budget, or that her budget was inflated.

Defendant's argument also ignores that the pendente lite support order on which he relies included both spousal and child support—$3,875—and the amount he cites in the FJOD—$1,857.50—represents only the sum ordered for alimony when in fact, the court in the FJOD also ordered defendant to pay an additional $172 per week, or $745.33 per month. Thus, under the FJOD, defendant's total monthly alimony and child support obligation is approximately $2,602.83. In comparing the correct pendente lite and alimony obligations

amounts as actually ordered by the court, the difference in defendant's monthly obligation is approximately $1,200, not the $2,047.50 or $2,605 as he claims. Thus, even defendant's arguments are based on incorrect calculations.

Nevertheless, "[a] trial court's findings regarding alimony should not be vacated unless the court clearly abused its discretion, failed to consider all of the controlling legal principles, made mistaken findings, or reached a conclusion that could not reasonably have been reached on sufficient credible evidence present in the record after considering the proofs as a whole." J.E.V., 426 N.J. Super. at 485. See Reese v. Weis, 430 N.J. Super. 552, 567 (App. Div. 2013). And, based on this record, we are not persuaded the court abused its discretion in reaching its determination plaintiff was entitled to monthly alimony of $1,857.50. We make this determination based on the record showing the court thoroughly reviewed the parties' financials, determined plaintiff's needs based on her budget, and found plaintiff's testimony in support of her budget more credible than defendant's testimony regarding his finances.

Similarly, we perceive no error in the court's decision not to award a credit to defendant in the amount he now seeks at the time of the FJOD and its denial of defendant's motion for reconsideration given the court's specific findings defendant was in significant arrears of his pendente lite obligations. Moreover,

defendant has failed to establish the court abused its discretion when it calculated alimony, or that the court erred in setting pendente lite support prior to trial. Again, courts have discretion to determine whether a credit to either party is warranted. See Slutsky, 451 N.J. Super. at 368-69. And, here the court awarded defendant a twenty-five percent credit based on the value of the former marital home, which was credited against defendant's support arrears.

Defendant's next argument the court erred by not granting him a credit in the amount of $23,815.46—representing the amount he paid directly to Probation during the pendente lite period—is equally unavailing. Defendant asserts the court "mistakenly withheld" this amount when it calculated the total arrears due in the FJOD. Defendant, again, raises but does not explain how the court erred in its determination, address the court's step-by-step analysis of its alimony and child support order, or dispute, with evidence, any of the court's findings regarding his prior payments made to Probation in support of his argument.

On this basis alone, we conclude defendant's vague assertions the court erred by not granting him a credit of $23,815.46 do not warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

We are also unpersuaded by defendant's final argument the court erred by quantifying plaintiff's current marital lifestyle as opposed to the marital lifestyle of the parties during the marriage in fixing alimony. Similar to defendant's prior argument, he again asserts the court erred in ordering him to pay all Schedule A and B expenses in addition to unallocated support stating, "$3,875 is beyond the appellant's earned W2 gross wages during the marriage. . . ." Again, defendant also argues plaintiff's mother contributed to the household upkeep and paid utility bills in support of the proposition that he never paid anything more than $1,100 during the marriage. Defendant cites Hughes v. Hughes, 311 N.J. Super. 15, 34 (App. Div. 1988), in support of his argument.

Defendant's reliance on Hughes, however, is misplaced. In Hughes, we held the court erred in determining the marital standard of living because the trial court's alimony award required defendant to "exist on support that would have kept her at the reduced level the couple would have had without borrowing" rather than awarding alimony based on "the higher standard of living at which the couple actually lived." Ibid.; see also Weishaus v. Weishaus, 180 N.J. 131, 145 (2004) (quantifying marital lifestyle requires a court to "establish[] the amount the parties needed during the marriage to maintain their lifestyle.").

Here, in determining the parties' marital lifestyle, the court made findings of fact and properly considered how the parties actually lived during the marriage, which included plaintiff's mother's financial assistance to the parties, plaintiff's inheritance of the marital home from her mother, and defendant's payment of the mortgage during the marriage. The court specifically referenced plaintiff's testimony that her mother contributed to the financial upkeep of the household and took care of the parties' two children when plaintiff was enrolled at Rutgers in 2017 and that she also paid some of the parties' utility bills, until she fell ill and died in 2018. The court also considered that plaintiff did not work from 2017 to 2019 while she was caring for the parties' children and obtaining her degree, that defendant was the primary wage earner during the marriage, and that defendant could likely "maintain a comparable standard of living as he was accustomed to prior to the parties' separation, however it is likely [p]laintiff cannot."

Contrary to defendant's assertions, there is ample support in the record for the court's determination defendant had the ability to pay alimony to allow plaintiff to maintain a comparable standard of living enjoyed during the marriage. The court correctly considered the alimony factors and the mere fact that it awarded alimony in excess of defendant's prior contribution to the

mortgage—$1,100—is not indicative of any error warranting reversal. "[A] judge awarding alimony must methodically consider all evidence to assure the award is 'fit, reasonable and just' to both parties, N.J.S.A. 2A:34-23, and properly balances each party's needs, the finite marital resources, and the parties' desires to commence their separate futures, N.J.S.A. 2A:34-23[(]c[)]]." Lombardi, 447 N.J. Super. at 39-40 (quoting Gnall, 432 N.J. Super at 149). We are satisfied the court determined plaintiff had been the supported spouse throughout the five-year marriage, that she was the primary caretaker of the parties' two children, and that defendant had the resources to contribute towards spousal support for a period of five years after reviewing the parties' finances. Defendant made at least four times as much as plaintiff and plaintiff's mother's previous contributions to the parties' utility bills and assistance with childcare ended when she fell ill and passed away in 2018.

The court also correctly concluded, "[t]he standard for granting an award of alimony is whether the supported spouse can maintain a lifestyle that is reasonably comparable to the standard of living enjoyed during the marriage" citing Crews, 164 N.J. at 16. The court weighed the statutory alimony factors prior to reaching its determination, including the marital standard of living.

Thus, the court's reliance on the parties' finances at the time of the divorce does not constitute error and is not irrational or contrary to law.

The court's detailed decision makes clear it reviewed all aspects of the parties' finances—made part of the record—prior to making its decision on alimony. In fact, the court referenced the July 2020 order for spousal support, made specific and detailed findings of fact regarding defendant's ability to support plaintiff and the parties' children, and further noted the likely financial impact it would have on the parties, stating "[a]lthough this diminishes defendant's standard of living, [p]laintiff will have no greater improvement in her lifestyle. . . . [p]laintiff and [d]efendant will have to find ways to limit their expenses and seek any additional income, if possible."

In sum, we discern no basis to disturb the court's well-reasoned and comprehensive opinion based on the evidence adduced at trial. Notably, defendant does not dispute the court's factual findings. Defendant merely argues the court erred in its alimony determination but makes no showing the court's decision was an abuse of discretion. And, given the complexities involved in resolving matrimonial disputes, we defer to the Family Part's special expertise. Hand v. Hand, 391 N.J. Super. 102, 111 (App. Div. 2007) (citing Cesare, 154 N.J. at 413) ("Appellate courts accord particular deference to the Family Part

because of its 'special jurisdiction and expertise' in family matters.").  And, we perceive no basis to second-guess the court's opinion, which is supported by "adequate, substantial and credible evidence" in the record, <u>Rova Farms Resort, Inc. v. Inv'rs Ins. Co.</u>, 65 N.J. 474, 484 (1974), and consistent with the applicable legal standards.

To the extent we have not addressed defendant's remaining arguments, we are satisfied they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1873-22